UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X     Index No.:
ANA ORTIZ,

                            Plaintiff,

             -against-

ELDERSERVE HEALTH, INC., individually and
d/b/a RIVERSPRING AT HOME, RIVERSPRING
SERVICES CORP., individually and d/b/a
RIVER SPRING HEALTH, and PRIME STAFFING, LLC,

                            Defendants.
-------------------------------------------------------------------X

**COMPLAINT**

Plaintiff Demands a
Trial by Jury

Plaintiff, ANA ORTIZ, by and through her attorneys, PHILLIPS & ASSOCIATES, PLLC, hereby

complains of the Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff brings this action charging that the Defendants violated Plaintiff's rights under the

    Family Medical Leave Act (FMLA), discriminated against, and discharged Plaintiff on the

    basis of her pregnancy in violation of the New York Executive Law and the Administrative

    Code of the City of New York, and to recover lost wages, an additional amount as liquidated

    damages, compensatory damages, punitive damages, reasonable attorneys' fees, and costs.

## JURISDICTION AND VENUE

2. The Court has jurisdiction under the FMLA pursuant to 29 U.S.C. §2617; 28 U.S.C. §1331,

    §1343 and pendent jurisdiction thereto.

3. This action involves a Question of Federal Law.

4. Venue is proper in this district based upon the fact that Plaintiff was employed by Defendants within the Southern District of New York and the discriminatory actions occurred within the Southern District of New York, 28 U.S.C. §1391(b).

## PARTIES

5. Plaintiff is a female resident of the State of New York, County of Bronx.

6. At all times material, Defendant ELDERSERVE HEALTH, INC., individually and d/b/a RIVERSPRING AT HOME (herein also referred to as "ELDERSERVE HEALTH") was and is a domestic not-for-profit corporation duly incorporated under the laws of the State of New York.

7. At all times material, Defendant RIVERSPRING SERVICES CORP. individually and d/b/a RIVER SPRING HEALTH (herein also referred to as "RIVERSPRING SERVICES") was and is a domestic not-for-profit corporation duly incorporated under the laws of the State of New York.

8. Defendant ELDERSERVE HEALTH and Defendant RIVERSPRING SERVICES are herein collectively referred to as "RIVERSPRING HEALTH."

9. Defendants RIVERSPRING HEALTH provide home care services for the elderly and persons with disabilities and maintain an office located at 94 West 225th Street, Bronx, NY 10463.

10. At all times material, Defendant PRIME STAFFING, LLC (herein also referred to as "PRIME STAFFING") was and is a domestic limited liability company duly incorporated under the laws of the State of New York.

11. Defendant PRIME STAFFING is a staffing agency with offices located at 499 Seventh Avenue, New York, NY 10018.

12. Defendants RIVERSPRING HEALTH and Defendant PRIME STAFFING were Plaintiff's joint employers.

13. Defendants RIVERSPRING HEALTH and Defendant PRIME STAFFING are collectively referred to as "Defendants."

14. At all times material, Plaintiff was a qualified employee under the FMLA because Plaintiff worked at least 1,250 hours during the 12 months prior to the start of her leave.

15. At all times material, Defendants were qualified employers under the FMLA because they employed at least 50 employees within their respective locations or within 75 miles of such locations.

## MATERIAL FACTS

16. On or about July 3, 2014, Plaintiff began working for Defendant PRIME STAFFING and Defendants RIVERSPRING HEALTH.  Plaintiff was hired as a Transportation Specialist at Defendants RIVERSPRING HEALTH's Bronx location.  Approximately one year later, Plaintiff was promoted to Clinical Operation Specialist based on her exemplary work performance.

17. As a Clinical Operation Specialist, Plaintiff was primarily responsible for performing data entry and clerical tasks relating to vendors and providing Spanish translation services.

18. On or about January 28, 2016, Plaintiff learned that she was approximately six weeks pregnant.

19. In or around the second week of March 2016, when Plaintiff was about 12 weeks pregnant, Plaintiff revealed her pregnancy to Yoni Kono, Defendants RIVERSPRING HEALTH's Administrative Services Manager and Plaintiff's immediate supervisor.  During her conversation with Ms. Kono, Plaintiff asked whether she would be allowed to keep her job

following her maternity leave.  In response, Ms. Kono told Plaintiff, **"I don't know. I will let you know as you get close to your due date."**

20. During that same conversation, immediately after Plaintiff disclosed her pregnancy, Ms. Kono began criticizing Plaintiff's performance, stating that Plaintiff was late to submit documents to various vendors.  Plaintiff told Ms. Kono that her accusation was false and that Ms. Kono could review the time stamps on Plaintiff's emails or faxes to verify Plaintiff's timely submissions. However, Ms. Kono simply ignored Plaintiff and continued to make unwarranted criticisms of Plaintiff's performance because of her pregnancy.

21. During a similar confrontation, Defendants RIVERSPRING HEALTH's Director, Joanne Orlando, overheard Ms. Kono accuse Plaintiff of submitting late work to vendors.  Ms. Orlando came to Plaintiff's defense, stating that the vendors are often dishonest and do not keep track of the faxes they receive.  Ms. Kono ignored Ms. Orlando's explanation and continued to criticize Plaintiff.

22. In or around May 2016, one of Defendants RIVERSPRING HEALTH's vendors provided lunch for the IT department.  However, because there was an abundance of food, employees from other departments were offered lunch as well.  Ms. Kono invited employees to come up for a second serving or take food home with them.  However, when Plaintiff stood up to get more food, Ms. Kono humiliated her by loudly shouting, **"This is the for the IT department. You are not allowed to eat anymore!"**  Ms. Kono made these remarks even while other non-IT department employees continued to take second servings.  Ms. Kono attempted to humiliate Plaintiff because of her pregnancy.

23. In or around mid-August 2016, concerned about her livelihood and her ability to support her family, Plaintiff again asked Ms. Kono whether she would be allowed to keep her job following

4

her maternity leave.  Plaintiff even told Ms. Kono that she would be willing to take a condensed leave of only six weeks to protect her job.  Ms. Kono replied, **"Oh I think that's a very good choice.  Six weeks is perfect, but I still don't have an answer regarding the job."**  Plaintiff pleaded with Ms. Kono to help her because she (Plaintiff) was a single mother, with one child already, and another on the way, and did not have anyone else on which to rely to pay her rent and expenses.  Ms. Kono simply replied, "OK."

24. Plaintiff's request for time off constituted a request for a reasonable accommodation for Plaintiff's pregnancy.

25. On or about September 13, 2016, Plaintiff sent an email to Ms. Kono and Defendants RIVERSPRING HEALTH's Manager, Shunea Donaldson, informing them that her last day of work before her maternity leave would be Monday, September 19, 2016, which was the same day as Plaintiff's due date.  Thereafter, Ms. Kono asked Plaintiff to change her last day to Friday, September 16, 2016.  Plaintiff agreed and began her maternity leave on the following week.

26. On or about October 11, 2016, Plaintiff received an email from Ray Morales, Defendant PRIME STAFFING's Director of Operations, requesting that Plaintiff contact him regarding her employment.  When Plaintiff called Mr. Morales, he advised her that Defendants RIVERSPRING HEALTH wanted Plaintiff to return to work immediately, irrespective of Plaintiff's right to FMLA leave.  Plaintiff responded that she had only given birth approximately three weeks prior and had not yet been medically cleared to return to work. Plaintiff also advised Mr. Morales that she needed several additional weeks to get her daughter vaccinated before she could enroll her at daycare and return to work.

27. Plaintiff pleaded with Mr. Morales to give her an additional three weeks of maternity leave and preserve her job. Mr. Morales stated that Plaintiff should contact him when she was ready to return to work but warned her that her position at Defendants RIVERSPRING HEALTH might not be available. Nevertheless, Mr. Morales assured Plaintiff that if she was not restored to her position at Defendants RIVERSPRING HEALTH, she would immediately be placed in another position by Defendant PRIME STAFFING. Plaintiff reiterated that she wanted to keep her position at RIVERSPRING HEALTH and would be ready to return to work in several weeks.

28. On or about October 21, 2016, Plaintiff sent an email to Mr. Morales and his assistant, Maria Chinchilla, advising them that she would be able to return to work on November 7, 2016, approximately seven weeks after the beginning of her maternity leave. Plaintiff asked whether she would be returning to her position with Defendants RIVERSPRING HEALTH or whether she should begin preparing to interview at another company. However, Plaintiff did not receive a response to her email.

29. On or about October 30, 2016, Plaintiff sent another email to Mr. Morales and Ms. Chinchilla stating that she "urgently need[s] to start working" and asking whether they had heard back from Defendants RIVERSPRING HEALTH about her employment. The next day, Mr. Morales replied, "No, we have not heard back yet. TX." Plaintiff asked if she should call Defendants RIVERSPRING HEALTH directly. Mr. Morales replied, "Yes but don't tell them I told u to? Ok."

30. Accordingly, on or about October 31, 2016, Plaintiff called Ms. Kono and told her that she was prepared to return to work. Ms. Kono callously replied, **"I have nothing for you. I told your agency that. Call them to find you something."** Plaintiff asked if there were any other

positions available. Ms. Kono replied that there were none. Plaintiff then desperately asked if Defendants RIVERSPRING HEALTH's Call Center Manager, Patty Hron, needed any Spanish-speaking employees. Ms. Kono stated that the department did not need Plaintiff because Defendants RIVERSPRING HEALTH recently hired four Spanish-speaking employees. Although Ms. Kono agreed to call Plaintiff if a position became available, she never contacted Plaintiff about a job opening.

31. Although Plaintiff was entitled to FMLA qualified leave, DEFENDANTS RIVERSPRING HEALTH failed to restore Plaintiff to her former position or a substantially similar role.

32. Throughout Plaintiff's medical leave, Defendants RIVERSPRING HEALTH continued to employ workers through DEFENDANT PRIME STAFFING.

33. On or about October 31, 2016, following her conversation with Ms. Kono, Plaintiff called Ray Morales but was unable to reach him. Plaintiff then sent an email to Mr. Morales summarizing her conversation with Yoni Kono and emphasizing her need to return to work. Specifically, Plaintiff stated via email:

> **"I just spoke with Yoni, and she just told me that she sent an email letting you know that she didn't have anything for me at the moment, but maybe later. Is there another place nearby that you can set me for now until they have something else available? The disability is not paying me much and I really need to start working no later than November 7th, my car was taken by the city so now I have no car momentarily."**

34. Despite Plaintiff's plea and her right to FMLA qualified leave, Mr. Morales did not respond to Plaintiff's email or return her call. Defendant PRIME STAFFING ignored Plaintiff and refused to offer her a new job placement because of her pregnancy and in retaliation for taking FMLA leave.

35. On or about December 23, 2016, with no response or contact from Defendant PRIME STAFFING, Plaintiff again emailed Ray Morales and Maria Chinchilla wishing them a Merry

Christmas and requesting information about other job placements.  Once again, Mr. Morales and Ms. Chinchilla ignored Plaintiff's email.

36. On or about January 13, 2017, Plaintiff sent an email to Gabriela Sandoval, Defendant PRIME STAFFING's Payroll Coordinator.  Plaintiff implored Ms. Sandoval to contact Mr. Morales and Ms. Chinchilla and have them contact Plaintiff about a job placement.

37. However, neither Mr. Morales nor Ms. Chinchilla contacted Plaintiff about another position in violation of the FMLA.  Moreover, to further discriminate against Plaintiff because of her pregnancy and to retaliate against Plaintiff for taking FMLA leave, Defendant PRIME STAFFING opposed Plaintiff's application for unemployment benefits.  Defendant PRIME STAFFING falsely claimed that Plaintiff left her position without good cause and did not provide documentation regarding her ability to return to work.

38. In or around March 2017, based on the recommendation of another RIVERSPRING HEALTH employee, Plaintiff contacted Yoni Kono to inquire about any available positions with Defendants RIVERSPRING HEALTH.  Ms. Kono once again refused to restore Plaintiff to her former position or a substantially similar role, or offer Plaintiff any job whatsoever.

39. In or around late March 2017, after more than four months of ignoring Plaintiff, Defendant PRIME STAFFING offered Plaintiff a new position to prevent Plaintiff from collecting unemployment benefits.  However, the job paid only $14 per hour as compared to Plaintiff's previous hourly rate of $19 per hour.  Although Plaintiff accepted the position and began working on April 17, 2017, after several weeks, Plaintiff was forced to resign because she could not afford to pay childcare and commuting expenses with her reduced wages.

40. Defendants would not have discriminated against Plaintiff but for her pregnancy and need for FMLA leave/a reasonable accommodation for time off.

41. Defendants terminated Plaintiff because of her pregnancy and because she took FMLA leave/required a reasonable accommodation for time off.

42. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

43. As a result of the Defendants' discriminatory and intolerable treatment of Plaintiff, she suffered severe emotional distress and physical ailments.

44. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

45. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against the Defendants.

**AS A FIRST CAUSE OF ACTION
UNDER THE FAMILY AND MEDICAL LEAVE ACT
RETALIATION & INTERFERENCE**

46. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if same were set forth herein fully at length.

47. § 2615 of the FMLA states as follows:

48. Prohibited acts
    (a) Interference with rights

      (1) Exercise of rights

          (a) It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

9

(2) Discrimination

> (b) It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

49. Defendants interfered with Plaintiff's rights under the above sections, discriminated against Plaintiff, and terminated Plaintiff from her employment because she took FMLA qualified leave.

## AS A SECOND CAUSE OF ACTION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## DISCRIMINATION

50. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if same were set forth herein fully at length.

51. The Administrative Code of City of NY § 8-107(1) provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

52. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her sex/pregnancy, together with unlawful termination.

## AS A THIRD CAUSE OF ACTION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## FAILURE TO PROVIDE REASONABLE ACCOMMODATION

53. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if same were set forth herein fully at length.

10

54. The New York City Administrative Code, as amended by the NYC Pregnant Workers Fairness Act, N.Y.C. Admin. Code § 8-107(22) provides: "It shall be an unlawful discriminatory practice for an employer to refuse to provide a reasonable accommodation…to the needs of an employee for her pregnancy, childbirth, or related medical condition that will allow the employee to perform the essential requisites of the job."

55. Defendants discriminated against Plaintiff when it refused to offer her reasonable accommodations for her pregnancy which would allow her to satisfy the essential requisites of her job.

**AS A FOURTH CAUSE OF ACTION**
**UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
**AIDING & ABETTING**

56. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

57. The New York City Administrative Code Title 8-107(6) provides that it shall be an unlawful discriminatory practice, "For any person to aid, abet, incite, compel or coerce the doing of any acts forbidden under this chapter, or attempt to do so."

58. Defendants engaged in an unlawful discriminatory practice by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

**AS A FIFTH CAUSE OF ACTION**
**UNDER NEW YORK STATE LAW**
**DISCRIMINATION**

59. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

60. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sex, or disability, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

61. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her sex/pregnancy, together with unlawful termination.

## AS A SIXTH CAUSE OF ACTION
## UNDER NEW YORK STATE LAW
## FAILURE TO PROVIDE REASONABLE ACCOMMODATION

62. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if same were set forth herein fully at length.

63. The New York Executive Law, as amended by the New York Women's Equality Act § 296(3), provides: "It shall be an unlawful discriminatory practice for an employer, licensing agency, employment agency or labor organization to refuse to provide reasonable accommodations to the known disabilities, [Effective January 19, 2016: or pregnancy-related conditions,] of an employee, prospective employee or member in connection with a job or occupation sought or held or participation in a training program."

64. Defendants discriminated against Plaintiff when it refused to offer her reasonable accommodations for her pregnancy which would allow her to satisfy the essential requisites of her job.

12

## AS A SEVENTH CAUSE OF ACTION
## UNDER NEW YORK STATE LAW
## AIDING AND ABETTING

65. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if same were set forth herein fully at length.

66. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice:

> "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

67. Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that the Defendants engaged in unlawful employment practices prohibited by the FMLA, the New York Executive Law and the Administrative Code of the City of New York;

B. Awarding damages to the Plaintiff, retroactive to the date of discharge, for all lost wages and benefits, past and future, back pay and front pay, resulting from Defendants' unlawful discharge and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation;

D. Awarding Plaintiff liquidated damages under the FMLA;

E. Awarding Plaintiff punitive damages;

13

F.   Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of this action;

G.   Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial, plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: New York, New York
December 5, 2017

**PHILLIPS & ASSOCIATES,**
**ATTORNEYS AT LAW, PLLC**

By:

Erica L. Shnayder, Esq.
*Attorneys for Plaintiffs*
45 Broadway, Suite 620
New York, NY 10004
Tel: 212-248-7431
Fax: 212-901-2107